UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RYAN NOAH SHAPIRO,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     Civil Action No. 13-0729 (PLF)
                                    )
DEPARTMENT OF JUSTICE,              )
                                    )
            Defendant.              )
_____ )

MEMORANDUM OPINION

This is a Freedom of Information Act ("FOIA") case brought by plaintiff Ryan Noah Shapiro against the United States Department of Justice. Shapiro has requested information from the FBI about Aaron Swartz, a deceased computer programmer, activist, and doctoral candidate at MIT. It is alleged that Swartz committed suicide after becoming the subject of an intensive federal investigation. After holding the parties' cross-motions for summary judgment partially in abeyance twice, this matter is now before the Court for a third time. Upon consideration of the parties' papers and the relevant legal authorities, the Court will grant summary judgment in favor of the defendant and deny the plaintiff's cross-motion for summary judgment.[1]

---

[1] The papers considered in connection with the pending motion include: Complaint ("Compl.") [Dkt. 1]; Defendant's Motion for Summary Judgment ("Def.'s Mot. for SJ") [Dkt. 5]; Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Def.'s Stmt. Facts") [Dkt. 5-2]; Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Cr. Mot. for SJ") [Dkt. 7]; Plaintiff's Statement of Material Facts as to which there Exists no Genuine Dispute ("Pl.'s Stmt. Facts") [Dkt. 7-7]; Third Declaration of David M. Hardy ("Third Hardy Decl.") [Dkt. 33-1]; Supplemental Brief in Support of Defendant's Motion for Summary Judgment ("Def.'s Second Supp. Br.") [Dkt. 39]; Fourth Declaration of David M.

I. FACTUAL AND PROCEDURAL BACKGROUND

Shapiro has sought information relating or referring to Aaron Swartz, who was an academic involved in political organizing and internet activism. Compl. ¶¶ 8, 11-20. In 2013, Swartz committed suicide after becoming the subject of a federal criminal investigation relating to his online activities. Id. ¶ 8. Shapiro alleges that this FBI investigation was connected to Swartz's death because of its "intensive" and "grossly disproportionate" nature. Id. ¶¶ 8-10.[2]

After the first round of document production, both parties moved for summary judgment. See Shapiro v. Dep't of Justice, 34 F. Supp. 3d 89, 92 (D.D.C. 2014). On March 31, 2014, this Court held the parties' cross-motions for summary judgment in abeyance in part pending further briefing and the FBI's processing of additional records, if necessary. See id. at 100. In supplementing its response, the government ultimately identified an additional 68 pages of documents not previously processed and released to Shapiro. Of these 68 pages, the government produced 35 of them in full, and withheld 9 pages in full and 23 pages in part, invoking FOIA Exemptions 3, 6, 7(C), 7(E), and 7(F). Third Hardy Decl. ¶ 7 n.1; see Shapiro v. Dep't of Justice, 2016 WL 4687156, at *2. On September 7, 2016, the Court granted summary judgment to the defendant regarding the adequacy of the search, but concluded that the government's justifications as to FOIA Exemptions 3 and 7(E) were "insufficient information for the Court to determine whether disclosure of these database search results would 'increase the risks that a law will be violated or that past violators will escape legal consequences.'" Shapiro

---

Hardy ("Fourth Hardy Decl.") [Dkt. 39-1]; and Plaintiff's Response to the Supplemental Brief in Support of Defendant's Motion for Summary Judgment ("Pl.'s Resp.") [Dkt. 42].

[2] The complete factual and procedural background of this case is discussed in the Court's previous summary judgment opinions. See Shapiro v. Dep't of Justice, 34 F. Supp. 3d 89, 92-94 (D.D.C. 2014); Shapiro v. Dep't of Justice, --- F. Supp. 3d ----, 2016 WL 4687156, at *1-2 (D.D.C. Sept. 7, 2016).

v. Dep't of Justice, --- F. Supp. 3d ----, 2016 WL 4687156, at *4 (D.D.C. Sept. 7, 2016) (citing Mayer v. Brown, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). The Court again held the parties' cross-motions in abeyance in part pending further explanation as to the government's justifications for withholding documents pursuant to FOIA Exemptions 3 and 7(E). See id. at *4-5.

The FBI now has provided supplemental information for invoking FOIA Exemptions 3 and 7(E) and a fourth declaration by David M. Hardy. See generally Def.'s Second Supp. Br.; Fourth Hardy Decl. Shapiro no longer challenges the government's justification under FOIA Exemption 3, but argues that the government's justification under FOIA Exemption 7(E) remains inadequate. Pl.'s Resp. at 1 n.1. Shapiro challenges the redaction of the name of a law enforcement database on one document (Swartz-91), and the FBI's withholding in full of seven pages generated by that database (Swartz-83-89). Pl.'s Resp. at 1. He asks that the Court "order disclosure of all information being withheld pursuant to Exemption 7(E)-1." Id. at 3.

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that he or she is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's]

inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

An agency can satisfy its burden with supporting affidavits or declarations if they are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011). "Such affidavits or declarations are accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" Lasko v. U.S. Dep't of Justice, 684 F. Supp. 2d 120, 127 (D.D.C. 2010) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d at 1200).

### III. DISCUSSION

Shapiro now challenges only the government's justification for withholding information under FOIA Exception 7(E). Pl.'s Resp. at 1 & n.1.[3] "Exemption 7(E) protects from disclosure law enforcement records 'to the extent that such . . . information would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose

---

[3] The D.C. Circuit recently stated that "a motion for summary judgment cannot be deemed 'conceded' for want of opposition." Winston & Stawn, LLP v. McLean, 843 F.3d 503, 505 (D.C. Cir. 2016). Although the Court cannot treat a party's complete lack of response as a concession in the summary judgment context, see id., Shapiro has explicitly stated that he no longer challenges the government's justification for withholding information under FOIA Exemption 3. The Court therefore can reasonably infer that there is "no dispute to resolve." See Shapiro v. U.S. Dep't of Justice, --- F. Supp. 3d ----, 2017 WL 908179, at *1 n.1 (D.D.C. Mar. 6, 2017).

4

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" Skinner v. U.S. Dep't of Justice, 893 F. Supp. 2d 109, 112 (D.D.C. 2012) (quoting 5 U.S.C. § 552(b)(7)(E)). The government has established, and Shapiro does not dispute, that the FBI is a law enforcement agency, and that the records were compiled for the law enforcement purpose of "investigating a computer intrusion of the public access system of the federal courts of the United States." Def.'s Second Supp. Br. at 4-5; see Fourth Hardy Decl. ¶ 9. The government therefore meets the threshold requirements under FOIA Exemption 7. See 5 U.S.C. § 552(b)(7).

The government asserts that the first prong of FOIA Exemption 7(E) — which allows the government to withhold "techniques and procedures for law enforcement investigation" — is a categorical bar, and it need not show how disclosure of records containing techniques and procedures could reasonably be expected to risk circumvention of the law. Def.'s Second Supp. Br. at 5-6. The D.C. Circuit does not agree. It has noted that it "has applied the 'risk circumvention of the law' requirement both to records containing guidelines and records containing technique and procedures." Pub. Emp. For Envtl. Responsibility v. Int'l Boundary & Water Comm'n, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014). The Circuit has also concluded, however, that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Id. (quoting Mayer Brown LLP v. IRS, 562 F.3d at 1194).

5

### A. *Redaction of Name of Database (Swartz-91)*

The government asserts that the partial redaction of Swartz-91 covers the name of a database, "not well-known to the public," that the FBI uses "in order to develop investigative leads." Def.'s Second Supp. Br. at 6; see Fourth Hardy Decl. ¶ 10. Although the government and its declarant spend considerable time discussing why disclosure of the name of the database "could jeopardize the FBI's investigative mission by revealing exactly where the FBI is obtaining certain types of investigative data," Def.'s Second Supp. Br. at 6-7; Fourth Hardy Decl. ¶ 10, the name of that database was already released in a previous copy of the document, in which the name "Accurint" was not redacted. Compare Third Hardy Decl., Ex. B at Swartz-91 [Dkt. 33-2], with Fourth Hardy Decl., Ex. A at Swartz-91 [Dkt. 39-1]. Because the name of the database already has been disclosed, the dispute is moot. The Court need not order further production or require the government to unredact the document.

### B. *Withheld Reports (Swartz-83-89)*

The government also has invoked FOIA Exemption 7(E) to withhold seven full pages (Swartz-83-89), containing "comprehensive reports" that are produced by the Accurint database. Fourth Hardy Decl. ¶ 10.[4] Mr. Hardy states that these reports "contain detailed information the FBI uses in its investigations." Id. This data allegedly "plays an essential role in decisions concerning the location and identity of suspects, factors essential for determinations to investigate fraud, uncover assets, and multiple other applicable law enforcement related uses."

---

[4] Both Mr. Hardy and the government sometimes refer to eight pages rather than seven. See Def.'s Second Supp. Br. at 6; Fourth Hardy Decl. ¶ 10. This is either simply an error, see Third Hardy Decl. Ex. B at 63, or because one additional page was not produced because it was found to be a duplicate of a page previously disclosed to plaintiff. See Third Hardy Decl. ¶ 7 n.1.

Id.  According to Hardy, if this information were released, criminals would gain "insight into the available tools and resources the FBI uses to conduct criminal investigations," and it would "enable criminals to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigative mission."  Id.  These statements logically demonstrate how the release of the requested information might create a risk of circumvention of the law and meet the relatively low bar required in this Circuit.  See Blackwell v. FBI, 646 F.3d at 42.

Shapiro argues in response that the government's release of the name of the database undermines — and is fatal to — its justification for withholding these seven documents under FOIA Exemption 7(E).  See Pl.'s Resp. at 2-3.  Shapiro explains that Accurint — the database — is a "law enforcement database owned by LexisNexis," and he attaches the publically available LexisNexis "User Guide for Accurint for Law Enforcement."  Pl.'s Resp., Ex. 2 [Dkt. 40-4].  The User Guide describes "all of the types of searches and reports available through Accurint" and lists "every data field that is available."  Pl.'s Resp. at 2.  Shapiro contends that the guide "vitiates the FBI's rationale for withholding under Exemption 7(E)" because "a criminal could obtain far more detailed information about the capabilities of Accurint for law enforcement from the User Guide than from the few pages of reports at issue here."  Id.[5]

---

[5]  Shapiro also argues that the supplemental declaration of Mr. Hardy is not credible and that any "claim of harm is simply manufa[c]tured" because the government disclosed the name of the Accurint database in an earlier production and now claims that disclosure of the database name would "jeopardize[] the FBI's investigative mission by revealing exactly where the FBI is obtaining certain types of investigative data."  Pl.'s Resp. at 2-3.  As previously noted, such declarations are accorded "a presumption of good faith."  Lasko v. U.S. Dep't of Justice, 684 F. Supp. 2d at 127 (citation omitted).  Although it appears that a mistake was made at some point in the production of documents, this alone does not lead this Court to conclude that the agency has acted in bad faith in seeking to withhold the additional reports pursuant to FOIA Exemption 7(E).

Shapiro's arguments are not persuasive. Although it is true that the government relies on the secrecy of the database in its justification, this does not diminish its interest in withholding specific reports generated by that database. "While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness" — as the government argues here. Judicial Watch, Inc. v. FBI, No.00-0745, 2001 WL 35612541, at *8 (D.D.C. April 20, 2001); see also Fourth Hardy Decl. ¶ 10. Even though "the identity of the investigative technique" is more publically known, disclosure of "the manner and circumstances of the technique" may still "frustrate enforcement of the law." Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998). The Court therefore concludes that the government has adequately justified the withholding of the two reports in full, consisting of seven pages, under FOIA Exemption 7(E).

## IV. CONCLUSION

The Court finds that the government has provided sufficient justification as to the documents it has withheld pursuant to FOIA Exemption 7(E). Because the government has demonstrated its compliance with the FOIA and its entitlement to judgment as a matter of law, final judgment will be entered in favor of the defendant. An Order consistent with this Memorandum Opinion and with prior opinions of this Court will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 20, 2017