UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
RYAN NOAH SHAPIRO,                        )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )   Civil Action No. 13-0729 (PLF)
                                          )
DEPARTMENT OF JUSTICE,                    )
                                          )
            Defendant.                    )
_____ )

OPINION

       This matter is before the Court on the defendant's renewed motion for summary judgment [Dkt. No. 53] and Mr. Shapiro's renewed cross-motion for summary judgment [Dkt. No. 55], after remand to this Court from the Court of Appeals. See Shapiro v. U.S. Dep't of Justice, 893 F.3d 796 (D.C. Cir. 2018). At issue is one remaining record, known as "Serial 91," redacted by the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Court will grant summary judgment in favor of the government and deny Mr. Shapiro's cross-motion for summary judgment.[1]

---

[1]     The Court has reviewed the following filings, and the exhibits attached thereto, in resolving the pending motions: Government's Motion for Summary Judgment ("Gov. Mot.") [Dkt. No. 53]; Fifth Declaration of David M. Hardy ("Fifth Hardy Dec.") [Dkt. No. 53-2]; Mr. Shapiro's Cross-Motion for Summary Judgment and Opposition to the Government's Motion ("Pl. Cross-Mot.") [Dkt. No. 55]; Exhibit 4: Serial 91 with Corresponding Asserted Exemptions ("Serial 91") [Dkt. No. 55-1 at 27]; Government's Reply in Support of its Motion for Summary Judgment and Opposition to Mr. Shapiro's Cross-Motion ("Gov. Reply") [Dkt. No. 62]; Sixth Declaration of David M. Hardy ("Sixth Hardy Dec.") [Dkt. No. 62-1]; and Mr. Shapiro's Reply in Support of his Cross-Motion for Summary Judgment ("Pl. Reply") [Dkt. No. 66].

I.  BACKGROUND

The history of this case is set out in prior opinions of this Court and of the U.S. Court of Appeals for the D.C. Circuit and need not be repeated here.  See Shapiro v. U.S. Dep't of Justice, 893 F.3d 796; Shapiro v. U.S. Dep't of Justice, 249 F. Supp. 3d 502 (D.D.C. 2017); Shapiro v. U.S. Dep't of Justice, 205 F. Supp. 3d 68 (D.D.C. 2016); Shapiro v. U.S. Dep't of Justice, 34 F. Supp. 3d 89 (D.D.C. 2014).  This Court has yet to evaluate the propriety of the government's withholdings as to Serial 91 – an additional, two-page document that was released following oral argument in the Court of Appeals.  The D.C. Circuit remanded the case for evaluation of the redactions made to Serial 91 and resolution of any dispute as to those redactions.  See Shapiro v. U.S. Dep't of Justice 893 F.3d at 800.

The government has made thirteen separate redactions to Serial 91, withholding material contained therein pursuant to Exemptions 3, 6, 7(C), and 7(E) of FOIA.  See Gov. Mot. at 3; see also 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(E).  In his cross-motion, Mr. Shapiro originally challenged eight of the thirteen withholdings made under Exemptions 3 and 7(E) of FOIA and requested that the Court review in camera an unredacted version of the document.  See Pl. Cross-Mot. at 1, 18.  He submitted a copy of the redacted version of Serial 91 as an exhibit to his cross-motion, identifying each of the eight challenged withholdings by letters A-H (referred to as "blocks" by the parties).  See Serial 91.  Over the course of the parties' briefing, Mr. Shapiro withdrew his challenges to three withholdings made pursuant to Exemption 7(E).  The parties continue to dispute the propriety of five redactions contained in Serial 91: the redactions labeled A, B, E, F, and H in Mr. Shapiro's Exhibit 4.  See id.

Attached as exhibits to its motion for summary judgment and its reply, the government has submitted two separate declarations by David M. Hardy – the Section Chief of

the FBI's Record/Information Dissemination Section, Information Management Division – to explain the FBI's justifications for nondisclosure. See Fifth Hardy Dec.; Sixth Hardy Dec. At the Court's request, the government has also submitted an unredacted copy of the two-page record referred to as "Serial 91" for the Court's in camera review. See Government's Notice [Dkt. No. 68].

## II.  DISCUSSION

Pursuant to FOIA, "[a]n agency must disclose agency records to any person under § 552(a), 'unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b).'" See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150-51 (1989) (quoting Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988)). "Consistent with [FOIA's] goal of broad disclosure, these exemptions have been consistently given a narrow compass." See id. at 151.

In moving for summary judgment, the government maintains that "the record demonstrates that the FBI carefully and deliberately differentiated between similar seeming kinds of information to protect intelligence sources and methods, and plaintiff's speculation and innuendo fail to establish any genuine issue of material fact." See Gov. Reply at 2 (citations omitted). Mr. Shapiro disputes the propriety of several of the FBI's withholdings made pursuant to Exemptions 3 and 7(E). See Pl. Cross-Mot. at 1.[2] The challenged redactions are labeled by letters A-H in Mr. Shapiro's Exhibit 4. See Serial 91. In his reply in support of his cross-motion for summary judgment, Mr. Shapiro states that "[w]ithout conceding that the FBI was correct in

---

[2]  The government has further narrowed the withholdings under Exemption 7(E) by adding a numerical designation to explain the FBI's justifications for withholding the material. Exemption 7(E)-2 refers to: "Sensitive File Number"; Exemption 7(E)-3: "Identity and/or Location of FBI or Joint Units, Squads, Divisions"; and Exemption 7(E)-4: "Database Identifier." See Fifth Hardy Dec. ¶ 8.

its application of Exemption 7(E) to the file numbers at issue in this case" – Blocks C, D, and G – "[he] withdraws his challenge to [those] redactions." See Pl. Reply at 10.  The Court therefore need not consider the propriety of the government's withholding as to Blocks C, D, and G because there is "no dispute to resolve."  See Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017); see also Shapiro v. U.S. Dep't of Justice, 249 F. Supp. 3d at 505 n.3.  Thus, the Court is tasked with evaluating whether Blocks A, B, E, F, and H of Serial 91 contain information properly withheld from Mr. Shapiro because they are exempted from release by FOIA Exemptions 7(E) and 3.  The Court proceeds to do so by reviewing the unredacted version of Serial 91 and applying the relevant case law as to these exemptions.

### A. Exemption 7(E)

Exemption 7(E) of FOIA permits the withholding of records that are

> compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

See 5 U.S.C. § 552(b)(7)(E).

To justify a withholding under Exemption 7(E), the FBI must demonstrate that: (1) the records were "compiled for law enforcement purposes," see 5 U.S.C. § 552(b)(7)(E); (2) the redacted information would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions," see 5 U.S.C. § 552(b)(7)(E); and (3) "the release of the requested information might create a risk of circumvention of the law."  See Blackwell v. F.B.I., 646 F.3d 37, 40-42 (D.C. Cir. 2011); see also Bloche v. Dep't of Defense, 370 F. Supp. 3d 40, 58 (D.D.C. 2019); Judicial Watch, Inc. v. U.S. Dep't of State, Civil Action No. 12-893 (JDB), 2017 WL 3913212

4

(D.D.C. Sep. 6, 2017); Levinthal v. Fed. Election Comm'n, 219 F. Supp. 3d 1, 6 (D.D.C. 2016); Shapiro v. Dep't of Justice, 249 F. Supp. 3d at 506.

Exemption 7(E) requires the government to meet a "relatively low bar" to justify withholdings. See Blackwell v. FBI, 646 F.3d at 42. "[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." See id. at 42 (quoting Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). And "where an agency 'specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference.'" See Lardner v. U.S. Dep't of Justice, 638 F. Supp. 2d 14, 31 (D.D.C. 2009) (quoting Campbell v. U.S. Dep't of Justice, 164 F.3d at 32).

As to the first requirement for withholding pursuant to Exemption 7(E), the "FBI need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." See Blackwell v. F.B.I., 646 F.3d at 40 (quoting Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1998) (internal quotations omitted)). The government contends, and Mr. Shapiro does not dispute, that Serial 91 was "created in connection with a sensitive counterterrorism investigation" undertaken by the FBI – an agency tasked with investigating national security threats. See Fifth Hardy Dec. ¶¶ 16-17. Consistent with this Court's prior determinations, see Shapiro v. U.S. Dep't of Justice, 249 F. Supp. 3d at 505, the government has met the threshold requirement under Exemption 7(E). The Court now turns to the propriety of the government's redactions under the second and third requirements.

1. Redactions to Blocks A, B, and E

Blocks A, B, and E refer to information contained in the redactions following "Attn:", "From: Counterterrorism", and "Title:", respectively.  See Serial 91.  The FBI has claimed that the withholding of Blocks A, B, and E are warranted under Exemption 7(E) to protect the identity of an FBI unit specifically created to "utilize and implement specific sensitive law enforcement techniques used in counterterrorism investigations."  See Fifth Hardy Dec. ¶ 35.  Mr. Shapiro disputes this justification and has requested that the Court view Serial 91 in camera.  The Court now has done so.

The government maintains that Blocks A and E are properly withheld under Exemption 7(E) because "[r]evealing the identity of the unit and its focus of interest would reveal unknown investigative techniques."  See Gov. Reply at 3; Sixth Hardy Dec. ¶¶ 9-10.  While Mr. Hardy, the FBI's declarant, does not expressly say the same about Block B, the Court's review of the unredacted document reveals that Blocks B and E are identical.[3]  Block A,

---

[3]    Unlike the redactions to Blocks A and E, Mr. Hardy's Fifth Declaration does not reference Block B or its corresponding Exemption.  Mr. Shapiro argues that the absence of discussion in the government's motion and its original supporting declaration should constitute a waiver by the FBI of any applicable exemption as to Block B.  See Pl. Cross-Mot. at 18.  Mr. Hardy's Sixth Declaration, however – submitted with the government's reply – does reference Block B, and Mr. Hardy explains there that Exemption 7(E) applies to Block B because "the redacted information is the identity of an FBI Unit."  See Sixth Hardy Dec. ¶ 22.  The Court agrees with the government that the omission of specific reference to Block B in Mr. Hardy's Fifth Declaration does not preclude the Court from reviewing the government's justification for withholding, particularly now that the Court has the document itself to review in camera.  Courts have established that all FOIA exemptions must be "assert[ed] at the same time, in the original district court proceedings."  See Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 764-65 (D.C. Cir. 2000).  This rule ensures that the opposing party has an opportunity to respond and to avoid the "danger of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding."  See Ryan v. Dep't of Justice, 617 F.2d 781, 792 (D.C. Cir. 1980); see also Maydak v. U.S. Dep't of Justice, 218 F.3d at 764-65.  Those concerns

on the other hand, does not contain information identical to that contained in Blocks B and E. The Court will first address the propriety of redacting Blocks B and E under Exemption 7(E) and then turn to Block A.

      Mr. Shapiro puts forward a number of arguments to challenge the government's justification for its redactions, but they are unpersuasive. First, Mr. Shapiro argues that "unless the specific unknown investigative technique is contained in the name of the unit, it is unclear how disclosure of the name of the unit would reveal investigative techniques or key information about the unit." See Pl. Cross-Mot. at 3. He also takes issue with the government's reference to the "unit and its focus of interest," arguing that "it is only the identity of the unit, not a statement about . . . its focus of interest, which is at issue here." See id. at 3. The FBI's declarant, David Hardy, has expressly declared, however, that the "FBI created this unit to utilize and implement specific sensitive law enforcement techniques used in counterterrorism investigations," see Fifth Hardy Dec. ¶ 35, and the "release of the specific unit/squad would reveal . . . the investigative technique the unit specializes in." See Sixth Hardy Dec. ¶ 9 ("[T]he name of this specific unit . . . would reveal a law enforcement technique specific to counterterrorism activity . . . ."); see also Gov. Reply at 3 ("The FBI redacted blocks A and E on Plaintiff's Exhibit 4 because disclosure of the unit or squad would reveal the investigative technique the unit uses as well as where the FBI has deployed it."). Although withholdings or redactions may not be justified by pure conclusory statements, Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), the Court's

---

are not present here, however, when the government explains the exemption upon which it relies to withhold Block B within the course of the same motions briefing; relies upon the same exemption to justify withholding Block B as that already asserted and thoroughly discussed in its first supporting declaration; and the opposing party has an opportunity to respond – and does so – in its reply.

review of the document itself supports Mr. Hardy's assertion that the redacted information in Blocks B and E reveals an investigative technique or procedure.

Mr. Shapiro also asserts that the FBI has not "claim[ed] that the names or locations of the unit at issue here are unknown to the public" or that the capabilities revealed are unknown, see Pl. Cross-Mot. at 3-4, citing Judge Susan Illston's decision in ACLU v. FBI, No. C 12-03728 SI, 2013 WL 3346845, at *9 (N.D. Cal. July 1, 2013).  While it is true that Exemption 7(E) "does not ordinarily protect 'routine techniques and procedures already well known to the public,'" see Elec. Frontier Found. v. Dep't of Justice, No. 17-cv-1039 (DLF), 2019 WL 1714433, at *3 (D.D.C. Apr. 17, 2019) (quoting Founding Church of Scientology of Wash., D.C. v. NSA, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979)), unlike the facts in ACLU v. FBI, Mr. Hardy in his declarations has stated explicitly that the investigative technique that would be revealed is unknown.  See Fifth Hardy Dec. ¶ 35; Sixth Hardy Dec. ¶ 9.

As for the risk of circumvention of the law, Mr. Hardy states that the disclosure of the FBI unit's name could "allow criminals to anticipate the use of these techniques" and "exploit [the FBI's investigative] weaknesses" by avoiding certain areas and targeting others to circumvent the law.  See Fifth Hardy Dec. ¶ 35; Gov. Reply at 3; Sixth Hardy Dec. ¶¶ 9-10.  In addition, he declares that the FBI unit name, if revealed, would expose key information about the FBI's capabilities and "the fact that the unit exists at all within the Pittsburgh Field Office area of operation."  See Sixth Hardy Dec. ¶¶ 9-10; Gov. Reply at 3.[4]  These statements logically explain

---

[4] Mr. Shapiro argues that the "FBI has not established why the location of the office is relevant in this particular case."  See Pl. Reply at 3.  He hypothesizes, based on the unredacted information in Serial 91, that the redacted unit name must be cyber-related, and argues that the unit's geographic location would therefore be irrelevant as "cyberspace is not geographically limited."  See id.  But the government establishes that the "unit name coupled with the location of the unit . . . would reveal . . . the physical interest of the investigation."  See Sixth Hardy Dec. ¶ 9.  It goes on to explain that "[i]f the name of this specific unit was known to

how knowledge of a unit name that features an investigative technique – particularly one that is unknown and revealed in conjunction with the specific location in which it is employed – could equip potential criminals with information needed to evade detection. A review of the document itself supports this view. The Court therefore concludes that the government has exceeded the relatively low bar required in this Circuit with respect to Blocks B and E. See Blackwell v. FBI, 646 F.3d at 42; Mayer Brown LLP v. I.R.S., 562 F.3d at 1194; Shapiro v. CIA, 247 F. Supp. 3d 53, 72 (D.D.C. 2017).

The Court turns now to Block A: Despite Mr. Hardy's reference to Blocks A and E as containing the name of a singular FBI unit, Block A does not contain information identical to that in Blocks B and E.[5] And unlike the information in Blocks B and E, it is not immediately apparent to the Court how a criminal would be able to utilize the information redacted in Block A to circumvent the law because it does not reveal – to the Court's uninformed eye – the investigative technique in which the unit specializes. See Sixth Hardy Dec. ¶ 9. Nor is it clear that the unit named in Block A has any geographic relationship to Pittsburgh. That said, the association of the unit in Block A with the rest of the information divulged in Serial 91 could reveal – by inference – the type of law enforcement activity that the unit conducts. Even though an investigative technique is not expressly named in the unit's name – as it is in Blocks B and E – reference to the unit in the context of other investigations could allow criminals to "pinpoint the exact reason for the investigation," and it would "alert [them] to the type of, and level of

---

exist in only certain locations it would allow criminal/terrorists to avoid or circumvent those locations in lieu of other locations." See id.

[5] Moreover, it would make sense that Blocks A and B would contain different information, given that Block A relates to information following "Attn:" and Block B relates to information following "From"; it would be illogical to seek the attention of the same FBI unit from whence the document originated.

focus on their particular activities." See Sixth Hardy Dec. ¶ 9. Thus, the Court will defer to the FBI's expertise in counterterrorism and in its own law enforcement operations, see Lardner v. U.S. Dep't of Justice, 638 F. Supp. 2d at 31, and conclude that the government has met the relatively low bar required in this Circuit with respect to Block A, as well. See Blackwell v. FBI, 646 F.3d at 42; Mayer Brown LLP v. IRS, 562 F.3d at 1194; Shapiro v. CIA, 247 F. Supp. 3d 53, 72 (D.D.C. 2017).

The government makes a separate "resource allocation" argument with respect to Blocks A and E, and by inference Block B – that is, that disclosing that "the FBI created a unit to implement a specific law enforcement technique [would] reveal[] key information about the FBI's allocation of investigative resources . . . knowledge [that] could enable investigative subjects to structure their behavior to avoid the FBI's investigative strengths and exploit its weaknesses." See Fifth Hardy Dec. ¶ 35. Mr. Shapiro rejects this rationale, pointing to case law to argue that "the allocation of resources is not an investigative technique or procedure, as it reveals nothing about how agents go about their task of investigating terrorism." See Pl. Cr.-Mot. at 5 (emphasis in original). And, he argues, if a withholding was justified under Exemption 7(E) based on the resource allocation argument, "it would be difficult to imagine any situation in which Exemption 7(E) would not apply." See Pl. Reply at 4. Having found that the government has met its burden under Exemption 7(E) with respect to Blocks A, B and E, the Court need not reach the "resource allocation" rationale as to those three Blocks, but it does note that other members of this Court have found the resource allocation argument persuasive. See, e.g., Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d at 118; Shapiro v. CIA, 247 F. Supp. 3d at 72-73.

2.  Redactions to Blocks F and H

Mr. Shapiro also disputes the application of Exemption 7(E) to Blocks F and H. Block F encompasses information below the word "Synopsis" and, upon examination, refers to a part of a sentence that follows: "To provide Pittsburgh with results of requested [redacted] of e-mail header data." Block H contains information listed below "Enclosures," and is also a redacted part of a sentence that reads: "A compact disk on which two Excel files contain the total [redacted] for the above lists." See Serial 91.

The government argues that the information contained in Blocks F and H has been justifiably withheld under Exemption 7(E) to protect the name of a database. It describes that database both as "not well-known to the public," see Fifth Hardy Dec. ¶ 37, and "non-public." See Gov. Reply at 7.[6] According to the FBI, "[r]eleasing the identity of the database and any specific information relating to the database would give criminals insight into the available tools and resources the FBI uses to conduct national security investigations (i.e., the scope, capabilities, and vulnerabilities)." See Fifth Hardy Dec. ¶ 37. Further, the government contends that the FBI's withholding of "information related to the database" "was part of the ruling upheld on appeal." See Mot. at 12. Mr. Shapiro disputes the applicability of the prior rulings of this Court and the D.C. Circuit, challenges the government's justification, and argues that the FBI's rationale, if accepted, would allow the FBI to withhold the name of any law enforcement database. See Pl. Cross-Mot. at 13-17.

---

[6] In his Sixth Declaration, Mr. Hardy also refers to "specific databases," whose "name may be public." See Sixth Hardy Dec. ¶ 20. Contrary to Mr. Shapiro's assertion that Mr. Hardy is referring to the database name at issue here, see Pl. Reply at 7, the Court interprets Mr. Hardy's statement as not referring to the database name withheld in Blocks F and H. Instead, Mr. Hardy appears to generalize, providing an explanation for when database names – even if known publicly – could allow requesters to conduct research related to those databases that would reveal sensitive law enforcement techniques. See Sixth Hardy Dec. ¶ 20.

This Court has considered previously in this case whether search results produced by a commercially-available database – called the "Accurint database" – should be withheld under Exemption 7(E). When first responding to Mr. Shapiro's challenge as to the withholding of those database search results, the Court rejected the government's arguments. See Shapiro v. U.S. Dep't of Justice, 205 F. Supp. 3d at 74. Following supplemental briefing, the Court concluded that the government had met its burden by providing additional information that demonstrated that the database search results "contain[ed] detailed information the FBI uses in its investigations," and if revealed, criminals would gain "insight into the available tools and resources the FBI uses to conduct criminal investigations," "enable[ing] [them] to employ countermeasures to avoid detection." See Shapiro v. U.S. Dep't of Justice, 249 F. Supp. 3d at 506 (quoting Fourth Declaration of David M. Hardy [Dkt. No. 39-1] ¶ 10). The Court concluded that the government adequately justified under Exemption 7(E) the withholding of seven pages of reports provided by the "Accurint database," but it did not rule on the propriety of withholding the database name, finding that "[b]ecause the name of the database ha[d] already been disclosed, the dispute is moot." See id. The D.C. Circuit affirmed, explaining that "[w]e allow the FBI to withhold records under Exemption 7(E) on the basis that releasing them would provide information on how a database is 'searched, organized, and reported.'" See Shapiro v. U.S. Dep't of Justice, 893 F.3d at 800.

Mr. Shapiro now challenges the government's withholding of a database name contained in Blocks F and H, not results produced by such a database. Because the Court has not yet ruled on the propriety of withholding a database name, it must disagree with the government that the D.C. Circuit's opinion governs here. See Gov. Mot. at 12. And so it will turn to evaluating the propriety of withholding Blocks F and H under Exemption 7(E).

Courts have indicated that the withholding of database names may, in some instances, be inappropriate, see Asian Law Caucus v. U.S. Dep't of Homeland Sec., No. C 08-00824 CW, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008), but have provided little guidance as to the circumstances in which that would be true.  The fact that the FBI uses databases to aggregate information related to law enforcement is well-known to the public.  And having reviewed the redacted information in Blocks F and H, the Court is not convinced that revealing the database name – in and of itself – would provide insight into the FBI's investigative techniques and procedures so as to increase the risk of circumvention of the law or to enhance the ability of criminals to "avoid detection by the FBI."  See Fifth Hardy Dec. ¶ 38; Pl. Cross-Mot. at 16.

That said, "[i]n this Circuit, exemption 7(E) applies if the disclosure of information related to even 'commonly known procedures' could 'reduce or nullify their effectiveness.'" Elec. Frontier Found. v. U.S. Dep't of Justice, 2019 WL 1714433, at *3 (quoting Vazquez v. U.S. Dep't of Justice, 887 F. Supp. 2d 114, 116 (D.D.C. 2012)); see also Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998).  Therein lies the crux of the government's argument.  It contends that "[r]evealing any further information about this database, or the name of the database itself, would jeopardize the FBI's investigative mission by revealing exactly where the FBI stores and obtains valuable investigative data for specific types of investigations and by potentially revealing sensitive details therein, such as the type of information collected and used during the course of the investigation."  See Sixth Hardy Dec. ¶ 20 (emphasis added); see also Fifth Hardy Dec. ¶ 38.  It is not, as Mr. Shapiro contends, only "the name of the database . . . at issue here."  See Pl. Cross-Mot. at 13.  Specifically, the government argues that the combination of information redacted in Serial 91 – the database name, the sensitive file number, and the unit

name – would form a "mosaic" of information that, when taken as a whole, would reveal sensitive information about a law enforcement technique and reflect the focus of the investigation. See Sixth Hardy Dec. ¶ 20.

Courts have generally found the government's "mosaic" argument persuasive in cases involving national security. See, e.g., Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 928-29 (D.C. Cir. 2003); Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d at 115. In particular, courts have permitted the withholding of database names when they "appear within a context in the withheld documents" – that is, contextualized by additional information – such that disclosure could lead to circumvention of the law, as the government argues here. See Asian Law Caucus v. U.S. Dep't of Homeland Sec., 2008 WL 5047839, at *4; see also McRae v. U.S. Dep't of Justice, 869 F. Supp. 2d 151, 168 (D.D.C. 2012); Shapiro v. CIA, 247 F. Supp. 3d at 72 (upholding the redaction of database names). Cf. Bishop v. U.S. Dep't of Homeland Sec., 45 F. Supp. 3d 380, 389 (S.D.N.Y. 2014) (collecting cases). As Judge Moss recognized, the "'mosaic' theory finds support in both Supreme Court and D.C. Circuit precedent recognizing that 'bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" See Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d at 115 (quoting CIA v. Sims, 471 U.S. 159, 178 (1985)). But see Shapiro v. U.S. Dep't of Justice, 239 F. Supp. 3d at 115 (explaining that the "mosaic" theory is not without limits).

As the government indicates, the disclosure of the information withheld in Blocks F and H would forever associate the database name to the information contained in Serial 91 that the FBI has not withheld – namely, the type of information stored in the database and the type of investigation in which the database would be utilized. See Sixth Hardy Dec. ¶ 20. Thus, criminals would be able to make certain inferences when the database is referenced. According

14

to the government, if a terrorist was armed with the knowledge of "which databases are most likely to be utilized based on specific levels of terrorist-related activities or certain investigative factors," he would then have the ability to "predict FBI investigative strategies and enhance [his] ability to avoid detection by the FBI." See Fifth Hardy Dec. ¶¶ 37-38.  These statements logically explain how knowledge of the database name could increase the risk of circumvention of the law.  The Court therefore finds that the government has met its low burden under Exemption 7(E).  See Blackwell v. F.B.I., 646 F.3d at 42.[7]  As the D.C. Circuit has said, "[w]e must take into account . . . that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information."  See Wolf v. CIA, 473 F.3d 370, 377 (D.C. Cir. 2007) (quoting Fitzgibbon v. CIA, 911 F.2d 755, 763 (D.C. Cir. 1990)).

        The government makes a separate argument to justify the withholding of the database name under Exemption 7(E):  the disclosure of the database name "could jeopardize the FBI's investigative mission by revealing exactly where the FBI is storing and obtaining valuable investigative data" by making it a more "attractive target for compromise."  See Fifth Hardy

---

[7] Mr. Shapiro's assertion that the FBI has withheld the database name in bad faith does not alter the Court's conclusion.  Mr. Shapiro argues that the FBI "recite[s], almost verbatim, the same boilerplate language used earlier to describe the harm that would result from disclosing the identity of the Accurint database," see Pl. Reply at 8, and warns the Court to be "wary of the FBI crying 'wolf' again."  See Pl. Cross-Mot. at 16-17.  But this Court never considered whether the FBI acted in bad faith when it redacted the Accurint database, and instead ruled that the dispute over the disclosure of the Accurint database name was moot because it had been disclosed in another record.  See Shapiro v. U.S. Dep't of Justice, 249 F. Supp. 3d at 506.  The Court is disinclined to make assumptions about the FBI's current behavior based on unlitigated allegations of bad faith.  Without any particularized evidence regarding the FBI's present conduct, Mr. Shapiro has failed to overcome the presumption that the FBI has operated in good faith.  See Lasko v. U.S. Dep't of Justice, 684 F. Supp. 2d at 127.  The mere "recycling [of] the same language" to substantiate a withholding does not rise to the level of bad faith in and of itself.  See Pl. Reply at 9.

15

Dec. ¶ 38.  "Courts have repeatedly 'recognized the risk of a cyber-attack . . . as valid grounds for withholding under Exemption 7(E).'"  See Prechtel v. Fed. Commc'ns Comm'n, 330 F. Supp. 3d 320, 335 (D.D.C. 2018) (quoting Long v. Immigration & Customs Enf't, 149 F. Supp. 3d 39, 51 (D.D.C. 2015)).  And courts also generally have affirmed the withholding of information related to databases – metadata, codes, and structures – under Exemption 7(E) for risk of cyber-attack or data breach.  See Levinthal v. Fed. Election Comm'n, 219 F. Supp. 3d at 8 (collecting cases); Long v. Immigration & Customs Enf't, 149 F. Supp. 3d at 51; Gosen v. U.S. Citizenship & Immigration Servs., 75 F. Supp. 3d 279, 290 (D.D.C. 2014).  The question for the Court, therefore, is whether the same risk is present if the database name is revealed.

Mr. Shapiro argues that if the Court concludes that the cybersecurity argument justifies withholding the database name, it "would mean that the name of every law enforcement database could be withheld under Exemption 7(E)."  See Pl. Cross-Mot. at 14.  And the Court is wary of the broad implications of so ruling.  But "[j]udges are not cyber specialists, and it would be the height of judicial irresponsibility for a court to blithely disregard . . . a claimed risk' of cyber-attack or a security breach."  See Long v. Immigration & Customs Enf't, 149 F. Supp. 3d at 53.  But see New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigration & Customs Enf't, 373 F. Supp. 3d 16, 67 (D.D.C. 2019).  The FBI has explained that knowledge of the "database names makes the original source data an attractive target for compromise."  See Fifth Hardy Dec. ¶ 38.  The government need only explain logically that disclosure of this information would reasonably risk circumvention of the law and, in the Court's view, it has met its burden.

B. Exemption 3: Blocks F and H

In the alternative, the FBI argues that Blocks F and H are justifiably withheld pursuant to Exemption 3.  Exemption 3 protects information specifically exempted by statute

> if that statute . . . (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

See 5 U.S.C. § 552(b)(3). Here, the government argues that the information contained in Blocks F and H are justifiably withheld under Exemption 3 because the information is prohibited from disclosure by Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1). See Fifth Hardy Dec. ¶¶ 9-14. Having concluded that Blocks F and H were justifiably withheld under Exemption 7(E), the Court need not address this argument.

### III. CONCLUSION

For the forgoing reasons, the defendant's renewed motion for summary judgment [Dkt. No. 53] is granted, and Mr. Shapiro's renewed cross-motion for summary judgment [Dkt. No. 55] is denied. Final judgment shall be entered for the defendant. An order consistent with this opinion shall issue this same day.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 24, 2019